UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHELLE MONTANA,

    Plaintiff,

v.                                         Case No:   2:15-cv-422-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**OPINION AND ORDER**

This cause is before the Court on Plaintiff Michelle Montana's Complaint (Doc. 1) filed on July 13, 2015. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, disability insurance benefits, and supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.**    **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work or any

other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B. Procedural History

On September 7, 2010, Plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Tr. at 120-21, 222-23). Plaintiff initially asserted an onset date of January 1, 2006, but later amended it to September 6, 2008. (Tr. at 222-23, 256). Plaintiff's applications were denied initially on January 11, 2011, and on reconsideration on March 31, 2011. (Tr. at 120-23).

A hearing was held before Administrative Law Judge Larry J. Butler on August 14, 2012. (Tr. at 32-55). ALJ Butler issued an unfavorable decision on February 22, 2013. (Tr. at 127-37). On July 8, 2014, the Appeals Council remanded the action back to an Administrative Law Judge. (Tr. at 142-44). On August 21, 2014, Administrative Law Judge T. Whitaker ("ALJ") held a second hearing. (Tr. at 56-119). The ALJ issued an unfavorable decision on January 30, 2015. (Tr. at 11-25).

On June 8, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on July 13, 2015. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 21).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Social Security*, 542 F. App'x 890, 891

(11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2018. (Tr. at 13). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 6, 2008, the amended alleged onset date. (Tr. at 13). At step two, the ALJ found that Plaintiff suffered from the following severe impairments:

> degenerative disc disease with chronic low back pain, status post vault cystourethropexy with suspension of the urethrovesical neck with history of urinary tract infection, dysuria, urinary frequency, urinary incontinence; status post total abdominal hysterectomy, status post enterocele repair, bilateral salpingo oophorectomy with history of abdominal pain secondary to hematoma following laproscopic resection of ovarian cyst; history of female pelvic peritoneal adhesion; ADHD, history of bereavement, anxiety, bipolar I disorder, bipolar affective disorder, bipolar disorder mixed, alcohol abuse and dependence in remission, cocaine dependence in remission, and polysubstance dependence (20 CFR 404.1520(c) and 416.920(c)).

(Tr. at 14).

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. at 16).

At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work except:

> the claimant can lift, push, pull, and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit, stand, and walk, each, for 6 hours in an 8-hour workday. The claimant is limited to simple, routine, and repetitive tasks with "simple" defined as unskilled tasks. The claimant is limited to a work environment free of fast-paced production requirements. The claimant is limited to work involving only simple work related decisions and only occasional work place changes. The claimant is limited to work with no interaction with the public and only occasional interaction with coworkers and supervisors. The claimant is limited to work that allows the individual to be off task 5% of the workday and not intermittently in addition to regularly scheduled break.

(Tr. at 18). The ALJ determined that Plaintiff was unable to return to her past relevant work. (Tr. at 23). After considering the vocational expert's testimony and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 24). The ALJ determined that an individual with the limitations found in Plaintiff's RFC was able to perform the following jobs: (1) Routing Clerk, DOT # 222.687-022, light, unskilled work; (2) Photo Copy Machine Operator, DOT # 207.685-014, light, unskilled work; and (3) Cleaner, DOT # 323.687-014, light, unskilled work.[2] (Tr. 24). The ALJ concluded that Plaintiff was not under a disability from September 6, 2008 through the date of the decision. (Tr. at 25).

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

**D. Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); and *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II.  Analysis**

On appeal, Plaintiff raises two issues. As stated by Plaintiff, they are:

1) The Administrative Law Judge's decision was in error in failing to give controlling weight to the opinion of the treating psychiatrist.

2) The Administrative Law Judge's decision was in error in relying on a response by a vocational expert to an incomplete hypothetical.

(Doc. 23 at 6, 8).

### A. Weight of Treating Psychiatrist

Plaintiff asserts that the ALJ failed to properly weigh the medical opinion of Luis Rives M.D., Plaintiff's treating psychiatrist. (Doc. 23 at 6-8). Plaintiff claims that she visited Dr. Rives on a regular basis from 2012 until the date of the hearing. (Doc. 23 at 7). Nevertheless, the ALJ afforded Dr. Rives' opinion little weight. (Doc. 23 at 8). Plaintiff argues that the ALJ failed to provide reasons or references to evidence of record and, thus, the ALJ failed to support this finding. (Doc. 23 at 7). The Commissioner responds that the ALJ properly weighed Dr. Rives' opinion and provided reasons why Dr. Rives' opinion was entitled to little weight. (Doc. 24 at 15-16).

After consideration of Dr. Rives' medical source statement, the ALJ accorded Dr. Rives' opinion little weight. (Tr. at 22). The ALJ indicated that Dr. Rives opined the following: "the claimant had fair to poor/or no ability to make occupational adjustments, performance adjustments, or social adjustments." (Tr. at 22). The ALJ found, "[h]owever, the opinion [of Dr. Rives] is not well supported by the totality of the claimant's medical records including mental health treating records and [Plaintiff's] activities of daily living." (Tr. at 22).

In Dr. Rives' Medical Assessment of Ability To Do Work-Related Activities Report, Dr. Rives found Plaintiff's abilities to be either fair or "poor to none." (Tr. at 802-04). Dr. Rives found Plaintiff's abilities to be fair in the following areas: (1) ability to follow work rules; (2) ability to relate to co-workers; (3) ability to interact with supervisors; (4) ability to function independently; (5) ability to understand, remember and carry out simple job instructions; and (6) ability to maintain personal appearance. (Tr. at 802-04). Dr. Rives found Plaintiff's ability to be "poor or none" in the following areas: (1) ability to deal with the public; (2) ability to use

6

judgment; (3) ability to deal with work stresses; (4) ability to maintain attention/concentration; (5) ability to understand, remember and carry out complex job instructions; (6) ability to understand, remember and carry out detailed, but not complex job instructions; (7) ability to behave in an emotionally stable manner; (8) ability to relate predictably in social situations; and (9) ability to demonstrate reliability. (Tr. at 802-04). By further explanation, Dr. Rives added in a handwritten section that Plaintiff has:

> severe [and] unpredictable mood swings, being treated for bi-polar illness, depression, and severe anxiety. Has periods of depression for days, isolating, lack of energy/initiative [and] crying. Significant impairments in focus, concentration and at times limited ability to follow-through. Anxiety at times is paralyzing and does experience panic attacks. Has irregular sleep patterns from one extreme to another. Has periods of fleeting hopelessness.

(Tr. at 803-04).

At the fourth step in the evaluation process, the ALJ is required to determine a plaintiff's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Along with the plaintiff's age, education, and work experience, the RFC is considered in determining whether the plaintiff can work. *Id*. Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a

7

claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

Plaintiff claims that the ALJ made findings that are inconsistent with the evidence of record, which undermined the ALJ's entire analysis and warrants a remand for reconsideration. (Doc. 23 at 7). Without citation to the record, Plaintiff argues that the ALJ mischaracterized the evidence when stating that Plaintiff "submitted limited ongoing treatment records." (Doc. 23 at 7). Plaintiff argues that she saw Dr. Rives on a regular basis for four years. (Doc. 23 at 7).

In the decision, the ALJ noted that Plaintiff "submitted limited ongoing treating records" but also noted that an update from the David Lawrence Center indicated that Plaintiff had seen a therapist for "approximately 18 months on a bi-weekly basis ending in August 2013 and is currently seeing another therapist from December 2013 to the present (August 2014) on a weekly basis." (Tr. at 21). The ALJ commented on the lack of treatment records, not the lack of

treatment. In fact, Plaintiff acknowledges that some psychotherapy records were not contained in the claim file. (Doc. 23 at 8). Thus, the ALJ's statement is accurate as to the lack of treatment records and consistent with the evidence of record.

Plaintiff also contends that when discounting a treating physician's opinion, an ALJ cannot simply state that the treating physician's opinion is not well supported by the totality of the mental health records and activities of daily living. (Doc. 23 at 7). Rather, Plaintiff claims that the ALJ must provide specific reasons or references to evidence of record to support this contention. (Doc. 23 at 7). Plaintiff argues that the ALJ erred in failing to support her decision to afford Dr. Rives' opinion little weight. (Doc. 23 at 7).

Upon review of the ALJ's decision, the Court finds that the ALJ carefully considered Dr. Rives' opinion and stated with particularity why she afforded his opinion little weight. The ALJ noted that Dr. Rives' opinion did not comport with his treatment notes. (Tr. at 21). The ALJ summarized Dr. Rives' treatment records as follows.[3] Dr. Rives treated Plaintiff for bereavement, ADHD, and bipolar disorder. (Tr. at 21). He prescribed psychotropic medications for Plaintiff. (Tr. at 21). Plaintiff attended AA meetings and underwent treatment to maintain her sobriety. (Tr. at 21). Even though Plaintiff complained of excessive anxiety, she was never diagnosed with this condition. (Tr. at 21). Despite Plaintiff's complaints, Dr. Rives found her mood "seemed pretty good and her affect was better than usual" with no evidence of mania or suicidal ideation. (Tr. at 21). Plaintiff's appearance was appropriate, attitude cooperative, mood euthymic, affect blunted, thought process linear, speech spontaneous, insight intact, judgment intact, and psychomotor activities were unremarkable. (Tr. at 21). Plaintiff's medications were

---

[3] Dr. Rives is not mentioned by name in this portion of the ALJ's decision. (Tr. at 21-22). However, the exhibit numbers cited by the ALJ, "24F" and "26F," correspond to Dr. Rives' treatment notes.

adjusted to accommodate her, but she was ambivalent to these medication changes, and was – at times – non-compliant by not following through with these recommended changes. (Tr. at 21). When non-compliant, Plaintiff's symptomatology returned and/or increased. (Tr. at 21). The ALJ concluded that when Plaintiff was compliant with a treatment and medication regimen, then her mental health condition was not disabling. (Tr. at 22).

In addition, the ALJ considered Plaintiff's activities of daily living that included, *inter alia*, frequent contact with family and friends, bowling, attending support groups, caring for her personal needs, cooking, preparing meals, sweeping, mopping or vacuuming. (Tr. at 22). The ALJ concluded that these activities did not support Dr. Rives' opinion that Plaintiff had, as stated previously, "fair to poor/or no ability to make occupational adjustments, performance adjustments, or social adjustments." (Tr. at 22).

Moreover, the ALJ afforded great weight to the opinions of the State agency psychological examiners whose opinions differed from Dr. Rives' opinion. (Tr. at 22). Specifically, one State agency non-examining psychologist, Eric Wiener, Ph.D., completed a Psychiatric Review Technique and found Plaintiff's limitations were not as severe as found by Dr. Rives, and that Plaintiff's limitations were less than "Marked" in all categories. (Tr. at 21,456-68). The Court finds that the ALJ carefully considered the opinion of Dr. Rives and stated with particularity why she afforded Dr. Rives' opinion little weight. Thus, the Court finds that the ALJ did not err in affording little weight to Dr. Rives' opinion, and the ALJ's decision as to Dr. Rives' opinion is supported by substantial evidence.

### B. Incomplete Hypothetical

Plaintiff argues that there is an inconsistency between the hypothetical question posed to the vocational expert and Plaintiff's RFC finding in the decision. (Doc. 23 at 9). The

Commissioner argues that any discrepancy is merely a typographical error. (Doc. 24 at 20). The alleged inconsistency relates to the percentage of time a person with Plaintiff's limitations would be off-task during a workday.

Focusing on the exact language, the ALJ posed a hypothetical to the vocational expert that included the following limitation: that the work would allow this person "to be off task five percent of the workday in addition to regularly scheduled breaks." (Tr. at 111). The vocational expert testified that a person with the limitations set forth in the hypothetical could perform work, but only "as long as the five percent is intermittent throughout the workday and not at any one time." (Tr. at 111). The ALJ amended the hypothetical to reflect "that the person needs work that allows them [sic] to be off task intermittently five percent of the workday in addition to regularly scheduled breaks." (Tr. at 111). The vocational expert testified that a person with the limitations listed in the hypothetical was able to perform other work in the national economy. (Tr. at 112).

In contrast, the ALJ found the following limitation in Plaintiff's RFC: "clamant is limited to work that allows the individual to be off task 5% of the workday and *not intermittently* in addition to regularly scheduled breaks." (emphasis added). (Tr. at 18). The language of the RFC directly conflicts with the language in the hypothetical given to the vocational expert concerning the terms *intermittently* versus *not intermittently*.

"The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform." *Phillips v. Barnhart*, 357 F.3d 1232, 1242 (11th Cir. 2004). An ALJ may use the Medical Vocational Guidelines or may obtain the testimony of a vocational expert to determine whether there a jobs that exist in the national

economy that a claimant can perform. *Winchell v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).

Here, the ALJ posed a hypothetical question to the vocational expert with a requirement that the person was off-task intermittently five percent of the workday. However, the RFC is inconsistent with the hypothetical in that the RFC contained language indicating that Plaintiff would be off-task for five percent of the workday, but "not intermittently." (Tr. at 18). From the record, the Court cannot simply assume that it was a typographical error on the part of the ALJ. The vocational expert specifically required the individual to be off-task "intermittently" and identified jobs that exist if this condition was met. The Court cannot determine if jobs exist in the national economy if Plaintiff will be off-task five-percent of the work day, not intermittently. The Court remands this action to the Commissioner to reconsider the issue of Plaintiff's limitation of being off-task during the workday.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence as to the weight afforded Dr. Rives' opinion, but is not supported by substantial evidence concerning the hypothetical posed to the vocational expert. Therefore, on remand the Commissioner should reevaluate the language of the RFC and the language of the hypothetical posed to a vocational expert concerning any limitation as to being off-task during the workday.

**IT IS HEREBY ORDERED:**

1) The decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider the language of the RFC and the language of the hypothetical posed to a vocational expert concerning being off-task during the workday.

2) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

3) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

**DONE AND ORDERED** in Fort Myers, Florida on September 19, 2016.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties